1   FRIEDMAN DUMAS & SPRINGWATER LLP
    CECILY A. DUMAS (S.B. NO. 111449)
2   33 New Montgomery Street, Suite 290
    San Francisco, CA 94105
3   Telephone Number:  (415) 834-3800
    Facsimile Number:  (415) 834-1044
4   cdumas@friedumspring.com

5   Attorneys for Chapter 11 Trustee,
    R. Todd Neilson
6
    DUANE MORRIS LLP
7   ARON M. OLINER (S.B. No. 152373)
    One Market Plaza, Spear Tower
8   Suite 2200
    San Francisco, CA 94105
9   Telephone Number:  (415) 957-3104
    Facsimile Number:  (415) 520-5308
10  roliner@duanemorris.com

11  Attorneys for Official Committee of
    Unsecured Creditors
12
                  UNITED STATES BANKRUPTCY COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                         SAN JOSE DIVISION
15

16  | In re | Chapter 11 Cases |
17  |       |                  |
    | CEDAR FUNDING, INC., a California | Case. No. 08-52709 and 08-53670 |
18  | corporation, CEDAR FUNDING | (Substantively Consolidated) |
    | MORTGAGE FUND, a California limited | |
19  | liability company, | **JOINT CHAPTER 11 PLAN OF** |
    | | **LIQUIDATION PROPOSED BY** |
20  | Debtors. | **R. TODD NEILSON, CHAPTER 11** |
    | | **TRUSTEE, AND THE OFFICIAL** |
21  | | **COMMITTEE OF UNSECURED** |
    | | **CREDITORS DATED DECEMBER 21,** |
22  | | **2010, AS AMENDED FEBRUARY 14,** |
    | | **2011** |
23  | | |
    | | Plan Confirmation Hearing: |
24  | | Date:  February 17, 2011 |
    | | Time:  11:00 a.m. |
25  | | Dept.:  Courtroom 3070 |
    | | 280 S. First Street |
26  | | San Francisco, CA 95113 |
    | | |
27  | | Judge:  Hon. Charles Novack |

28

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARTICLE I. DEFINED TERMS ............................................................................................... 5

    1.1    Defined Terms ................................................................................................. 5

ARTICLE II. CLASSIFICATION OF CLAIMS AND INTERESTS ................................. 15

    2.1    Criterion of Class. ......................................................................................... 15

    2.2    Classes of Claims and Interests ................................................................ 16

        2.2.1    Class 1 Claims. ........................................................................... 16

        2.2.2    Class 2 Claims.. .......................................................................... 16

        2.2.3    Class 3 Claims.. .......................................................................... 16

        2.2.4    Class 4 Claims. ........................................................................... 16

        2.2.5    Class 5 Interests. ........................................................................ 16

ARTICLE III. TREATMENT OF UNCLASSIFIED CLAIMS ......................................... 16

    3.1    Administrative Claims. ................................................................................. 16

    3.2    Claims for Professional Fees. ..................................................................... 16

    3.3    U.S. Trustee Fees. ........................................................................................ 17

    3.4    Priority Tax Claims. ...................................................................................... 17

ARTICLE IV. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............... 17

    4.1    Priority Claims (Class 1). ............................................................................. 17

    4.2    Fractionalized Interestholder Secured Claims (Class 2). .................... 17

    4.3    Unsecured Claims (Class 3). ..................................................................... 18

    4.4    Convenience Class Claims (Class 4) ....................................................... 18

    4.5    Interests (Class 5). ....................................................................................... 18

    4.6    Nonconsensual Confirmation ................................................................... 18

        4.6.1    Classes 1 through 4 Cramdown. ........................................... 18

        4.6.2    Class 5 Cramdown. .................................................................... 19

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .................................. 19

Case: 08-52709   Doc# 1496   Filed: 02/14/11   Entered: 02/14/11 12:10:06   Page 2 of 44

| | | | |
|---|---|---|---|
| | 5.1 | Revesting of Estate Assets. | 19 |
| | 5.2 | Replacement of Trustee. | 19 |
| | 5.3 | Dissolution of Committee. | 19 |
| | 5.4 | Management of Liquidating Debtors by Plan Administrator. | 20 |
| | 5.5 | Post-Confirmation Committee. | 21 |
| | 5.6 | Limitations of Liability. | 22 |
| | 5.7 | Continued Operation of the Liquidating Debtors. | 23 |
| | 5.8 | Liquidation of Real Property Assets; Sale Procedures Order. | 23 |
| | 5.9 | Fractionalized Interestholder Stay Pending Appeal. | 23 |
| | 5.10 | Retained Claims and Defenses. | 24 |
| | | 5.10.1 Standing. | 25 |
| | | 5.10.2 Avoidance Actions | 25 |
| | | 5.10.3 Small Claims and Defenses | 25 |
| | | 5.10.4 Large Claims and Defenses | 25 |
| | | 5.10.5 Bankruptcy Rule 2004 | 26 |
| | 5.11 | Funding of the Plan. | 26 |
| | 5.12 | Establishment of Accounts by Plan Administrator. | 26 |
| | 5.13 | Cooperation. | 27 |
| | 5.14 | Payment of Plan Expenses. | 27 |
| | 5.15 | Distribution Procedures. | 27 |
| | | 5.15.1 Distributions on Allowed Class 1 and Class 4 Claims. | 27 |
| | | 5.15.2 Distributions on Allowed Class 3 Claims. | 27 |
| | 5.16 | Treatment of Disputed Claims. | 28 |
| | 5.17 | Calculation of Appropriate Reserves. | 29 |
| | 5.18 | Treatment of Unclaimed Property. | 29 |
| | 5.19 | De Minimis Distributions; Rounding of Distributions. | 29 |
| | 5.20 | Post-Confirmation Professional Fees. | 30 |
| | 5.21 | Repeal of Bylaws; Replacement of Fund Manager. | 30 |

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:48:00    Page 3 of
44

| | | |
|---|---|---:|
| 5.22 | Estimation of Claims. | 30 |
| ARTICLE VI. CONDITIONS PRECEDENT | | 31 |
| 6.1 | Conditions to Confirmation. | 31 |
| 6.2 | Conditions to Effective Date. | 31 |
| ARTICLE VII. EFFECTS OF CONFIRMATION | | 32 |
| 7.1 | Binding Effect of Plan. | 32 |
| 7.2 | Revesting of Property Free and Clear. | 32 |
| 7.3 | Injunction. | 32 |
| 7.4 | Limitation of Liability. | 33 |
| ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 34 |
| ARTICLE IX. MODIFICATION OF PLAN | | 35 |
| ARTICLE X. RETENTION OF JURISDICTION | | 35 |
| ARTICLE XI. MISCELLANEOUS PROVISIONS | | 36 |
| 11.1 | Rules of Interpretation. | 36 |
| 11.2 | Computation of Time. | 37 |
| 11.3 | Governing Law. | 37 |
| 11.4 | Exhibits. | 37 |
| 11.5 | Transfer Tax Exemption. | 37 |
| 11.6 | Notices. | 37 |
| 11.7 | Successor and Assigns. | 38 |
| 11.8 | Implementation. | 39 |
| 11.9 | Corporate Actions. | 39 |
| 11.10 | Waiver of Fourteen (14) Day Stay. | 39 |

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:48:00    Page 4 of 44

# **PRELIMINARY STATEMENT**

This joint chapter 11 plan of liquidation is proposed by R. Todd Neilson, chapter 11 trustee (the "Trustee") for the bankruptcy estates of Cedar Funding, Inc., a California corporation ("Cedar Funding"), and Cedar Funding Mortgage Fund, LLC, a California limited liability company (the "Fund"), debtors in the substantively consolidated Chapter 11 Cases (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and together with the Trustee, the "Proponents").

Since his appointment on June 17, 2008, the Trustee has been engaged in the process of sorting out and recovering the assets of the bankruptcy estate, investigating potential claims against David Nilsen and other third parties, and administering the mortgage loan portfolio that constitutes the Debtors' primary asset. The goal of this process has been to liquidate the assets of the estate and to formulate a proposal to distribute the proceeds in as equitable a manner as possible to all creditors. This Plan is the result of that process.

Through his investigation, the Trustee has determined that from May 2004 until the Petition Date, Cedar Funding and the Fund were operated as a Ponzi scheme. The consequence of this determination is that there is a well-developed set of rules that are applied by Bankruptcy Courts in Ponzi scheme cases that do not apply in other bankruptcy cases. Payments made while a business is being operated as a Ponzi enterprise are presumed to be fraudulent transfers, and such transfers may be avoided by the Trustee and recovered for the benefit of all creditors. The foregoing principle is applicable to the interest payments paid by Cedar Funding to investors in fractionalized interests in mortgage loans, and to interest payments made to investors in the Fund. Such interest payments are presumed fraudulent because the Trustee's forensic analysis shows that the money used to pay interest to investors came from new money invested instead of from the performance of the mortgage loans (i.e., payments by the borrowers). In fact, substantially all of the mortgage loans in the portfolio were nonperforming.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:40:06    Page 5 of
44

## Proposed Allowance of Claims

The vast majority of the Claims filed in the Bankruptcy Cases are claims of investors. Very few claims arise from trade debt, taxes or employment obligations, and the amount of such claims will not have a material impact on distributions under the Plan. Because most of the Creditors are investors, all of whom have been harmed by the operation of the Ponzi scheme, the Plan Proponents have structured the Plan to provide for ratable distribution to Creditors.

Based on the legal principles described in the paragraph above, the Plan proposes that the Allowed Amount of Claims of investor Creditors will be initially determined based on the amount of principal invested by each creditor, excluding any interest to which the creditor contends he or she may be entitled. The reason for this is because the interest payments promised by the Debtors did not come from a legitimate source; the payments came from money invested by new investors. In order for all similarly situated creditors to be placed on equal footing, interest must be disregarded.

This leads to the second aspect of the claim allowance proposed under the Plan for investor Claims. Some investors of Cedar Funding and/or the Fund received monthly interest payments, while other investors "reinvested" their interest. The Plan provides a mechanism designed to equalize the treatment of investor Creditors: It provides that if an investor received interest payments from the Debtors during the period of Ponzi operation (May 2004 – May 2008), the total amount of all payments received by the investor will be deducted from the principal sum invested by that investor to arrive at the Allowed Amount of the Claim. An illustration follows:

|  | Principal Sum Invested | Payments Received Between May 2004-May 2008 | Allowed Amount of Claim |
|---|---|---|---|
| Investor A | $100,000 | $25,000 | $75,000 |
| Investor B | $100,000 | $0.00 | $100,000 |

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:16:00    Page 6 of 44

## Proposed Distributions

Through a ruling of the Bankruptcy Court which occurred earlier in the case, the assets and liabilities of Cedar Funding and the Fund have been substantively consolidated. The effect of this ruling is all assets of either Debtor will be combined into one source of distributions under the Plan, and Creditors will receive similar treatment under the Plan whether they hold Claims against Cedar Funding or against the Fund.

The Plan contemplates that an initial distribution to holders of Allowed Claims will be made on the Initial Distribution Date, which will be no later than sixty (60) days after the Effective Date, subject to order of the Bankruptcy Court authorizing a later date. Further distributions will be made on a periodic basis until all Net Available Cash has been distributed.

No distributions will be made on account of a Claim unless and until the Claim has been Allowed. Certain Claims will be treated as Disputed Claims, and the holder of such Disputed Claims will not be entitled to receive distributions, although the Disputed Claims will be reserved for under the Plan. In particular, all Claims which are in a face amount that is greater than the amount of the Claim as calculated by the Trustee under the formula set forth above will be objected to and treated as Disputed Claims.

In addition, all investors who have filed an appeal from the Bankruptcy Court's orders avoiding their fractionalized interests in notes and deeds of trust originated by Cedar Funding will not be entitled to any distributions under the Plan. Instead, the recovery of those investors will be limited to the portion of the Sale Proceeds representing their fractionalized ownership interest arising from the disposition of the real property in which such investor asserts an interest, and even then, only if the Bankruptcy Court issues an order staying the disbursement of the proceeds by the Plan Administrator during the pendency of the appeal. In connection with any request for a stay pending appeal, the Trustee or Plan Administrator, as applicable, will request the Bankruptcy Court to require the appellant to post a bond or other security to protect the rights of all unsecured creditors. If no stay

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:16:00    Page 7 of 44

pending appeal is issued, then the Plan Administrator may use the sale proceeds that would
otherwise by due to the investor to fund distributions under the Plan.

**Appointment of a Plan Administrator**

The Plan provides for the administration of Estate Assets after confirmation by
a manager proposed by the Committee ("Plan Administrator"), who will replace the Trustee
as the responsible party for the Liquidating Debtors. Confirmation of the Plan shall
constitute and confirm the appointment of the Plan Administrator, including responsibility
and authority to (a) exercise the rights, power and authority of the Liquidating Debtors, under
the applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (b) retain
post-confirmation professionals to represent the Liquidating Debtors and to assist the Plan
Administrator in performing and implementing the Plan, including without limitation
retaining professionals originally engaged by the Trustee and the Committee, and (c)
liquidate the remaining Estate Assets and close the Chapter 11 Cases.

**Funding of the Plan**

The Plan contemplates the liquidation of all Estate Assets for the benefit of the
holders of Allowed Claims. The resulting funds, after payment of Plan Expenses, will be
made available for distribution to holders of Allowed Claims in accordance with the terms of
the Plan. The Plan Administrator's operation of the Liquidating Debtors will be for the
purpose of liquidating and monetizing Assets. The Assets consist primarily of Cash, Real
Property Assets and the Retained Claims and Defenses. The Plan Administrator shall
expeditiously seek to collect, liquidate, sell and or reduce to Cash all Assets; provided, that
the Plan Administrator shall liquidate the Real Property Assets within a period of time
reasonably calculated to achieve the maximum return given all factors he deems to be
appropriate in his sole discretion, following consultation with the Post-Confirmation
Committee, including, without limitation, market conditions, carrying costs and ownership
risks.

As set forth in the Disclosure Statement, the Plan Proponents believe that the
Plan will allow the holders of Unsecured Claims to receive a meaningful return on account of

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 8 of
44

their Allowed Claims against the Debtors, depending on the sales of Real Property Assets, the outcome of litigation and the allowance of Claims.

**The Plan Process**

With the Plan, Creditors will receive a Ballot for voting on the Plan, and a Disclosure Statement which provides information concerning the Debtors and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtors, a summary of what Creditors will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for confirmation of the Plan. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that it meets the applicable legal standards before the Plan can be confirmed. If the Plan is not confirmed, The Bankruptcy Court may order the Cases dismissed, or converted to liquidating cases under chapter 7 of the Bankruptcy Code, or the Trustee or other parties in interest may propose a different plan.

The Trustee and the Committee believe that the Plan provides the best mechanism available for maximizing returns to Creditors and urge Creditors to vote in favor of the Plan.

## ARTICLE I.

## DEFINED TERMS

### 1.1    Defined Terms.

As used in this Plan, the following terms (which appear in the Plan as capitalized terms) have the meanings set forth below:

"<u>Administrative Claim</u>" means any Claim for costs and expenses of administration allowed under the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Cedar Funding Petition Date of preserving and recovering the

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:16:00    Page 9 of
44

Debtors' estates, (b) compensation for legal and other professional services and reimbursement of expenses awarded to the Trustee, or professionals retained by the Trustee or Committee, under sections 330(a) or 331 of the Bankruptcy Code, (c) fees of the Trustee, (d) any post-Petition Date cost, indebtedness, or contractual obligation validly incurred or assumed by the Debtors in the ordinary course of their respective businesses, and (e) the United States Trustee's quarterly fees assessed against the Debtors' estates under 28 U.S.C. section 1930(a)(6).

"Administrative Claims Bar Date" shall mean the first Business Day that is thirty (30) days after the Effective Date pursuant to which Creditors must file a request for payment of any Administrative Claim that arose between the Cedar Funding Petition Date and the Effective Date, for which notice shall be provided in the Proponents' notice of entry of the Confirmation Order.

"Allowed" means with respect to any Claim or Interest: (a) a Claim or Interest that is not a Disputed Claim or Disputed Interest, and either (i) such Claim or Interest has not been scheduled by the Trustee as most recently amended as disputed, contingent or unliquidated as to amount as to which no timely proof of Claim or Interest has been filed by the applicable Bar Date; or (ii) with respect to which a proof of Claim or proof of Interest has been filed in a sum certain by the applicable Bar Date or has otherwise been deemed timely filed under applicable law; or (b) the Claim or Interest has been allowed by an order of the Bankruptcy Court; or (c) such Claim or Interest is expressly allowed under this Plan.

"Allowed Amount" means where a Claim or Interest is Allowed, the amount in which such Claim or Interest has been Allowed, as determined under this Plan, the Bankruptcy Code and the Bankruptcy Rules. No interest will be paid by the Estates on the Allowed Amount of any Claim, except as required by applicable law or as otherwise expressly provided in this Plan. For purposes of determining the Allowed Amount of an Allowed Claim or Allowed Interest, the Plan Administrator will deduct (a) an amount equal to the amount of any claim which either of the Debtors or the Estates may hold against the Holder thereof, to the extent such claim may be set off pursuant to section 553 of the Bankruptcy

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:15:08    Page 10
of 44

Code or other applicable law, and (b) payments made on or after the Cedar Funding Petition Date on account of such Claim, except as otherwise provided in this Plan.

"Allowed Claim" means a Claim that has been Allowed.

"Allowed Interest" means an Interest that has been Allowed.

"Available Cash" means, with respect to the Initial Distribution and any subsequent distribution contemplated herein, the aggregate amount of all Cash held by the Estates immediately prior to such distribution. Available Cash shall include Sales Proceeds, provided, that if Subject Investors have obtained a Stay Pending Appeal then the Sales Proceeds shall remain in a segregated account pursuant to the Sale Procedures Order until entry of a Final Order in the Investor Avoidance Actions.

"Avoidance Action" means any and all claims and causes of action which any of the Debtors, the Trustee, the debtors-in-possession, the Estates, and Committee, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar state or federal statutes and common law.

"Bankruptcy Code" means Title 11 of the United States Code, §§ 101 et seq., as in effect as of the Cedar Funding Petition Date, as the same thereafter has been and may be amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California or, in the event such court ceases to exercise jurisdiction over these Cases, such court or adjunct thereof which thereafter exercises jurisdiction over one of both of these Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as in effect as of the Cedar Funding Petition Date, as the same thereafter have been and may be amended, and the Local Rules of the Bankruptcy Court.

"Bar Date" means, as applicable: (i) September 23, 2008, which was the date set by the Bankruptcy Court in the Cedar Funding Chapter 11 Case as the last day for filing a proof of Claim for a Claim that arose before the Cedar Funding Petition Date for non-governmental

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:45:00    Page 11 of 44

units; (ii) the later of (a) November 24, 2008, which was the date set by the Bankruptcy Court in the Cedar Funding Chapter 11 Case as the last day for filing a Claim that arose before the Cedar Funding Petition Date for governmental units, or (b) the date which is 180 days after the date on which any tax return for a prepetition period is filed or amended; (iii) November 18, 2008 which was the date set by the Bankruptcy Court in the Fund Chapter 11 Case as the last day for filing a Claim for a Claim that arose before the Fund Petition Date for non-governmental units; and (iv) January 7, 2009, which was the date set by the Bankruptcy Court in the Fund Chapter 11 Case as the last day for filing a Claim that arose before the Fund Petition Date for governmental units.

"Business Day" means any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by any federal, state or local law to be closed in the City of San Jose.

"Cases" means the Cedar Funding Chapter 11 Case and the Fund Chapter 11 Case, collectively.

"Cash" means cash and cash equivalents including, but not limited to, checks and other similar forms of payment or exchange.

"Cedar Funding" means Cedar Funding, Inc., a California corporation.

"Cedar Funding Chapter 11 Case" means the Chapter 11 case commenced by Cedar Funding in the Bankruptcy Court pending as Case No. 08-52709 CN.

"Cedar Funding Common Stock" means the common stock of Cedar Funding.

"Cedar Funding Petition Date" means May 26, 2008, which is the date on which Cedar Funding filed its voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

"Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown, including, without

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:15:08    Page 12
of 44

limitation, any claim against either of the Debtors as defined in section 101(5) of the Bankruptcy Code.

"Class" means a category of holders of Claims or Interests as set forth in Article II of this Plan of Liquidation.

"Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code on or about November 13, 2008.

"Confirmation Date" means that date on which the Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Order" means the order, as entered, of the Bankruptcy Court confirming this Plan of Liquidation pursuant to section 1129 of the Bankruptcy Code.

"Creditor" means any person or entity that holds a Claim.

"Debtors" means Cedar Funding and the Fund, the Debtors in the Chapter 11 Cases.

"Debt" shall mean liability on a Claim.

"Disallowed" means any Claim or Interest, or any portion thereof, that: (a) has been withdrawn, in whole or in part; or (b) is scheduled by the Trustee in his Schedules as most recently amended as contingent, disputed or unliquidated and the Holder of such Claim or Interest has not filed a proof of Claim or Interest by the applicable Bar Date; or (c) has been disallowed, in whole or in part, by an order of the Bankruptcy Court.

"Disallowed Claim" means a Claim, or any portion thereof, that is Disallowed.

"Disallowed Interest" means an Interest, or any portion thereof, that is Disallowed.

"Disclosure Statement" means the disclosure statement describing this, as approved by the Bankruptcy Court.

"Disputed Claim" means a Claim against the Debtor (a) that has been included in the Schedules as disputed, contingent, or unliquidated, or (b) as to which an objection has been filed and which objection is not the subject of a Final Order.

"Disputed Claims Amount" means the aggregate amount of Disputed Claims that are fixed, absolute, and neither contingent nor unliquidated. For purposes of calculating distributions of Net Available Cash under the Plan, the amount of each Disputed Claim shall

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:45:00    Page 13 of 44

be based on the face amount of such Creditor's Disputed Claim (or the disputed portion thereof) as set forth in the Creditor's filed proof of Claim.

"Distribution Date" means the Initial Distribution Date or the date on which any subsequent distribution is made under this Plan.

"Effective Date" means the first Business Day on which each of the conditions specified in Article VI has been satisfied or duly waived.

"Estate Assets" means any and all real and personal property of the Debtors or any kind or nature, including, without limitation, all property of the Debtors' Estates under section 541 of the Bankruptcy Code.

"Estates" means the Debtors' bankruptcy estates.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final Distribution" means a final distribution of Net Available Cash that will occur within sixty (60) days after the later to occur of: (a) Entry of a Final Order resolving any and all objections to any Claims in Class 3; or (b) the reduction to Cash of all Estate Assets.

"Final Order" means an order, ruling, decree or judgment or other similar matter having the operation of effect thereof, issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction, which has not been reversed, vacated, stayed, modified or amended and as to which: (a) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired; or (b) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided or dismissed.

"Fractionalized Interestholder Secured Claims" means any all Claims held by Creditors who assert security interests in or ownership of notes and deeds of trust, or any fractionalized interest therein, originated by Cedar Funding, and whose interests have not been avoided by a Final Order.

"Fund" means Cedar Funding Mortgage Fund, LLC, a California limited liability company.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:19:00    Page 14 of 44

"Fund Chapter 11 Case" means the Chapter 11 case commenced by the Fund in the Bankruptcy Court and consolidated with the Cedar Funding Chapter 11 Case by order of the Bankruptcy Court entered on April 30, 2009.

"Fund Petition Date" means July 11, 2008, the date the Trustee filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code on behalf of the Fund.

"Initial Distribution Date" means the first date after the Effective Date on which the Plan Administrator determines to make a distribution of Estate Assets to holders of Allowed Class 3 Claims, or to holders of Administrative Claims, Priority Claims, and Allowed Class 1 and 4 Claims that are not Allowed on the Effective Date but are Allowed by the date of such distribution. The Initial Distribution Date will be no later than the first Business Day that is sixty (60) days after the Effective Date, unless the Plan Administrator obtains an order from the Bankruptcy Court authorizing the Initial Distribution Date to be a later date.

"Interests" shall mean the equity interests of Cedar Funding including, but not limited to, common stock and warrants, options, or other rights exercisable or convertible into such common stock and all legal, equitable and contractual rights resulting from being a holder of such equity interest.

"Investor Avoidance Actions" shall mean the following adversary proceedings filed by the Trustee in the Bankruptcy Court: *Neilson v. Aiken*, Adv. Proc. No. 08-05222, *Neilson v. Albright*, Adv. Proc. No. 09-05120, *Neilson v. Aguirre*, Adv. Proc. No. 09-05225 and *Neilson v. Dwyer*, Adv. Proc. No. 09-05260.

"Liquidating Debtors" means the Debtors as reorganized and reconstituted on an after the Effective Date.

"Liquidation Amount" means all Estate Assets remaining after (i) payment in full of Allowed Administrative Claims, all Allowed Priority Claims, and all Allowed Class 4 Claims; (ii) payment in full of all fees owing to the Clerk of the Bankruptcy Court and fees owing to the U.S. Trustee; and (iii) payment in full of all Plan Expenses.

"Loan Payoffs" has the meaning used in the Sale Procedures Order, and includes Full Payment and Short Pays, as such terms are defined in the Sale Procedures Order.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:08    Page 15
of 44

"Net Available Cash" means the aggregate amount of Available Cash held by the Estates after the payment of (or appropriate reserve for) Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 4 Claims, and net of amounts reserved for Disputed Claims and Plan Expenses.

"Plan" means this joint chapter 11 plan of liquidation and any exhibits and schedules hereto and any documents incorporated herein by reference, as the same may be from time to time amended or modified as and to the extent permitted herein or by the Bankruptcy Code.

"Plan Administrator" means Russell Burbank, whose curriculum vitae is set forth as **Exhibit A** hereto and who shall file a further statement setting forth his qualifications, including a disclosure of any potential conflicts of interest, pursuant to Bankruptcy Code § 1129(a)(5)(A)(i) not less than ten (10) days prior to the last day to object to confirmation of the Plan.

"Plan Expenses" means all actual and necessary costs and expenses incurred after the Effective Date in connection with the administration of the Plan, including, but not limited to, (i) costs, expenses and legal fees related to the filing and prosecution of objections to Claims, (ii) costs, expenses and legal fees incurred to investigate, litigate, estimate and settle the Retained Claims and Defenses, including but not limited to attorneys' fees, accounting fees, expert witness fees, consultants' fees, and all costs relating to obtaining and distributing such recoveries, incurred by the Liquidating Debtors, (iii) the costs and expenses of administration of the Liquidating Debtors, including, without limitation, the fees and costs of the Plan Administrator; (iv) amounts necessary to compensate members of the Post-Confirmation Committee and the Professionals incurred after the Confirmation Date for services rendered at the request of the Plan Administrator; (v) all costs to manage, store, transport, transfer and destroy records, (vi) all fees payable pursuant to 28 U.S.C. § 1930, and (vii) tax liabilities for tax years ending after the Effective Date.

"Post-Confirmation Budget" means the budget for Plan Expenses the Plan Administrator projects on the Effective Date to be necessary and appropriate, in the exercise of his business judgment, to carry out the provisions of this Plan.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:15:00    Page 16 of 44

"Post-Confirmation Committee" means the three (3) member committee to be chosen by the Committee to consult with and advise the Plan Administrator.

"Priority Claim" means those Claims, if any, afforded priority under Bankruptcy Code Sections 507(a) and (b).

"Priority Employee Claims" means that portion of an Allowed Claim that is unsecured and is entitled to priority under section 507(a)(4) of the Bankruptcy Code.

"Priority Tax Claim" means an Allowed Claim entitled to priority against the Estates under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"Professional" means a person or entity (a) employed in the Cases prior to the Confirmation Date, in accordance with Bankruptcy Code Sections 327, 328 or 1103; (b) employed by the Trustee or the Committee between the Confirmation Date and the Effective Date; or (c) employed by the Plan Administrator or the Post-Confirmation Committee after the Effective Date in accordance with the terms of this Plan.

"Professional Fees" means all amounts allowed and awarded by the Bankruptcy Court for compensation for services rendered and reimbursement of expenses incurred by Professionals pursuant to Bankruptcy Code §§ 330(a) and 503(b).

"Pro Rata Share" means, with respect to distributions on account of Allowed Claims, in the same ratio of an Allowed Claim in a particular Class to the aggregate of all Allowed Claims in that Class.

"Real Property Assets" shall mean all Estate Assets which constitute interests in real property under applicable non-bankruptcy law.

"Retained Claims and Defenses" means all actions, including Avoidance Actions, causes of action, suits, counterclaims, defenses, cross-claims, rights of offset, recoupment, subrogation, subordination, debts, accounts, covenants, contracts, controversies, agreements, promises, damages or judgments held by the Debtors or the Estates against any party whether or not pending on the Effective Date, not otherwise released or settled before the Effective Date.

{00557629.DOC v 1}

JOINT PLAN OF LIQUIDATION
(AS AMENDED FEB. 14, 2011)

"Sale Procedures Order" means the Order Approving Procedures for: (1) Real Property Sales and the Payment of Closing Costs and Reimbursements, Including Brokerage Commissions; (2) Loan Payoffs and Reconveyances; (3) Related Compromises; (4) the Making of Secured Advances; and (5) Loan Collection, Administration and Enforcement, Including Foreclosures, Forbearances, and Deeds in Lieu entered on October 23, 2009 in the docket of the Bankruptcy Court, a true and correct copy of which is attached hereto as **Exhibit B**.

"Sales Proceeds" means all Cash and non-Cash net proceeds (after payment of all sale-related expenses provided for under the Sale Procedures Order) of the sales of Real Property Assets and Loan Payoffs, including without limitation all proceeds held by the Trustee or the Plan Administrator for the benefit of Subject Investors (as such term is defined in the Sale Procedures Order) pursuant to the Sale Procedures Order.

"Schedules" means the schedules of assets and liabilities, statements of financial affairs, and such other schedules filed in the Cases by the Chapter 11 Trustee.

"Secured Claim" means any Claim arising before the Cedar Funding Petition Date or Fund Petition Date, as applicable, that is: (a) secured in whole or in part, as of the applicable petition date, by a lien which is valid, perfected and enforceable under applicable law on property in which either of the Debtors or the Estates has an interest and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, or (b) subject to set-off under section 553 of the Bankruptcy Code; provided, however, with respect to both (a) and (b), only to the extent of the value of the holder's interest in such Debtor's or Estate's interest in such property securing any such Claim or the amount subject to set-off, as the case may be, as determined under section 506(a) of the Bankruptcy Code.

"Stay Pending Appeal" means an order of the Bankruptcy Court, obtained pursuant to the procedures set forth in Article V (5.9) of this Plan, enjoining the Trustee or the Plan Administrator, as applicable, from transferring Sales Proceeds from the segregated account established under the Sale Procedures Order, or the Disputed Claims Reserve, as applicable.

{00557629.DOC v 1}

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 18 of 44

"Trustee" is as defined in the Preliminary Statement to this Plan, the duly appointed trustee in the Cedar Funding Chapter 11 Case.

"Trustee Fees" means fees payable to the Trustee under sections 326, 330 and 331 of the Bankruptcy Code.

"Unclaimed Property" means any funds (together with any interest earned thereon) that are unclaimed on the sixtieth (60th) day following a Distribution Date. Unclaimed Property shall include (a) checks (and the funds reserved thereby) that have been returned as undeliverable without a proper forwarding address, (b) funds for checks that have not been honored within sixty (60) days after a Distribution Date, and (c) checks (and the funds reserved thereby) that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such checks.

"Unclassified Claim" means a Claim of the type described in Article III of this Plan.

"Unsecured Claim" means any Claim that is not a Priority Claim, Administrative Claim or Secured Claim.

"U.S. Trustee" means the United States Trustee for the Northern District of California.

## ARTICLE II.

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 2.1    Criterion of Class.

The following is a designation of Classes of Claims under the Plan. Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. In the event of a dispute as to whether any Class of Claims is properly designated, the Bankruptcy court shall, after notice and hearing, determine such dispute pursuant to Bankruptcy Rule 3013.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:15:00    Page 19 of 44

**2.2** **Classes of Claims and Interests**

All Claims and Interests are divided into the following Classes, which Classes shall be mutually exclusive:

2.2.1 **Class 1 Claims.** Class 1 consists of all Priority Claims other than Priority Tax Claims.

2.2.2 **Class 2 Claims.** Class 2 consists of all Fractionalized Interestholder Secured Claims.

2.2.3 **Class 3 Claims.** Class 3 consists of all Unsecured Claims other than Class 1 and Class 4 Claims.

2.2.4 **Class 4 Claims.** This Class consists of all Claims that are either: (a) in an amount equal to or less than $2,000.00; or (b) in an amount greater than $2,000.00, but for which the holder of such Claim elects to have such Claim treated in its entirety as a Class 4 Claim in the amount of $2,000.00 by so indicating on the ballot submitted to vote such Claim.

2.2.5 **Class 5 Interests.** Class 5 consists of all Interests in Cedar Funding.

### ARTICLE III.

### TREATMENT OF UNCLASSIFIED CLAIMS

**3.1** **Administrative Claims.**

Each Allowed Administrative Claim, unless the holder has agreed to a different treatment, shall be paid in full by the Liquidating Debtors from Available Cash on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court; (c) the tenth (10th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such date as the holder of such Claim and the Plan Administrator may agree.

**3.2** **Claims for Professional Fees.**

Each party seeking an award by the Bankruptcy Court for Professional Fees must file its final application for allowance of compensation for services rendered and

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:15:00    Page 20 of 44

reimbursement of expenses incurred through the Effective Date on or before the Administrative Claims Bar Date. If the Bankruptcy Court grants such an award, each such party will be paid in full by the Liquidating Debtors from Available Cash in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable, provided that allowed Trustee Fees may be paid pro rata with distributions under the Plan so as not to exceed the limitation imposed by 11 U.S.C. § 326(a).

### 3.3    U.S. Trustee Fees.

Quarterly fees payable to the U.S. Trustee pursuant to 28 U.S.C. section 1930(a)(6) shall be paid as such fees become due.

### 3.4    Priority Tax Claims.

Each Allowed Priority Tax Claim, unless the holder of such Claim has agreed to a different treatment, shall receive deferred Cash payments to the extent permitted by section 1129(a)(9) of the Bankruptcy Code with interest on the unpaid portion of such Claim at the rate established by applicable nonbankruptcy law as of the calendar month in which the Plan is confirmed, or at such rate as may be agreed upon between the Liquidating Debtors and the appropriate governmental unit; provided, that the Liquidating Debtors may prepay any or all such Claims without premium or penalty.

# ARTICLE IV.

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 4.1    Priority Claims (Class 1).

Class 1 shall consist of Priority Claims. Class 1 Claims are unimpaired. Each Holder of a Class 1 Allowed Claim will receive, in full and final satisfaction of and in exchange for such Class 1 Allowed Claim, an amount equal to the Allowed Amount of such Class 1 Allowed Claim from Available Cash on or as soon thereafter as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim.

### 4.2    Fractionalized Interestholder Secured Claims (Class 2).

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 21 of 44

Class 2 shall consist of Fractionalized Interestholder Secured Claims.  All Class 2 Claims are Disputed Claims.  To the extent that any Fractionalized Interestholder Secured Claim is an Allowed Secured Claim, the holder(s) of such Allowed Fractionalized Interestholder Secured Claims are unimpaired and, therefore, not entitled to vote.

### 4.3    Unsecured Claims (Class 3).

Class 3 shall consist of Unsecured Claims.  Class 3 Claims are impaired.  All Class 3 Claims are subject to the provisions for Allowance or Disallowance of Claims as set forth in this Plan or otherwise as set forth in the Bankruptcy Code or other applicable law.  Each Holder of a Class 3 Allowed Claim will receive, in full and final satisfaction of and in exchange for such Class 3 Allowed Claim, Cash equal to the Claimant's Pro Rata share of the Liquidation Amount.

### 4.4    Convenience Class Claims (Class 4)

Class 4 shall consist of convenience Claims.  Class 4 Claims are impaired.  Each holder of a Class 4 Allowed Claim will receive, in full and final satisfaction of and in exchange for such Class 4 Allowed Claim, on or as soon thereafter as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, Cash equal to 100% of the Allowed Amount of such Class 4 Allowed Claim.

### 4.5    Interests (Class 5).

Class 5 consists of all Interests in any of the Debtors.  Holders of Allowed Class 5 Interests will receive no distribution on account of their Allowed Class 5 Interests and all Interests will be cancelled in accordance with Article V (5.21).

### 4.6    Nonconsensual Confirmation

#### 4.6.1    Classes 1 through 4 Cramdown.

The Proponents hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 1 through Class 4 Claims.

(AS AMENDED FEB 14, 2011)

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 22 of 44

4.6.2     **Class 5 Cramdown.**

The Proponents hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 5 Interests.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in this Plan regarding the means of implementation, the following shall constitute the principal means for implementation of the Plan.

**5.1**     **Revesting of Estate Assets.**

Upon the Effective Date, the Liquidating Debtors shall be vested with all right, title and interest in the Estate Assets, free and clear of all Claims and Liens, other than as provided for under this Plan.

**5.2**     **Replacement of Trustee.**

Upon the Effective Date, the Trustee shall be relieved of his responsibilities pursuant to the order authorizing appointment. The Liquidating Debtors, through the Plan Administrator, shall be authorized to execute such other documents as are necessary and appropriate to carry out the provisions of the Plan, without the necessity of filing such documents with the Bankruptcy Court.

**5.3**     **Dissolution of Committee**.

On the Effective Date, the Committee shall be dissolved and the members of the Committee shall be released and discharged from any further rights and duties in connection with the Cases, except with respect to any disputes over the amount, allowance or payment of Administrative Claims payable to the members of the Committee and any of its Professionals for services rendered prior to the Effective Date.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:45:00    Page 23 of 44

## 5.4    Management of Liquidating Debtors by Plan Administrator.

The Plan Administrator shall be responsible for implementation of the Plan, including with respect to management, control and operation of the Liquidating Debtors. Without limiting the generality of the foregoing, the Plan Administrator may (a) reserve for Disputed Claims, (b) review and determine, object or settle, where appropriate, Administrative Claims or Claims, (c) review and prosecute, settle or release all Retained Claims and Defenses, (d) dispose of any property of the Estates in an orderly and expeditious manner, (e) undertake all actions authorized to the taken by the Trustee pursuant to the Sale Procedures Order, (f) make distributions to holders of Allowed Administrative Claims or Allowed Claims; (g) submit quarterly reports to the Office of the United States Trustee and make quarterly payments to the Office of the United States Trustee in accordance with 28 U.S.C. section 1930(a)(6), until the entry of a final decree and order closing the Cases; (h) employ Professionals, including Professionals retained by the Trustee, at the expense of the Estates to assist in fulfilling his obligations under the Plan; and (i) perform such other acts that are necessary to fully implement the Plan or administer the Cases.

The Plan Administrator shall post a bond in favor of the Liquidating Debtors in an appropriate amount as may be agreed from time to time by the Plan Administrator and the Post-Confirmation Committee, in consultation with the U.S. Trustee, or as otherwise ordered by the Bankruptcy Court.

The Plan Administrator shall be compensated on an interim basis at the rate of $475 per hour, plus reasonable out of pocket expenses, paid monthly from Estate Assets without further order of the Bankruptcy Court, provided, however, that prior to any monthly payment thereof, the Plan Administrator shall provide at least five (5) days notice of the amount and basis for such fees to the Post-Confirmation Committee.  Provided no objection is received, such fees may be paid to the Plan Administrator.  Upon receipt of an objection, the Plan Administrator shall apply to the Bankruptcy Court for payment of the subject fees, unless the objection is resolved by agreement of the parties.  For time incurred prior to the

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:08    Page 24 of 44

Confirmation Date in preparation for a transfer of control, the Plan Administrator may be compensated Post-Confirmation up to 15 hours time.

The Post-Confirmation Committee may remove the Plan Administrator if it determines that such removal is in the best interests of creditors. Within ten (10) Business Days prior to the effective date of removal of the Plan Administrator, the Post-Confirmation Committee shall file with the Bankruptcy Court a notice of a proposed replacement Plan Administrator, together with a declaration of the proposed replacement Plan Administrator establishing that he is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. Upon the effective date of removal of the Plan Administrator as determined by the Post-Confirmation Committee, the new Plan Administrator shall assume the responsibilities of the Plan Administrator.

Upon completion of all duties necessary to administer the Estates in accordance with the terms of this Plan, the Plan Administrator shall file and set for hearing a final post-confirmation application seeking approval of all fees and expenses previously paid as compensation by the Liquidating Debtors after the Effective Date.

### 5.5 Post-Confirmation Committee.

On the Effective Date, a Post-Confirmation Committee consisting of three (3) members will be constituted and will continue until entry of the Final Decree. No Creditor will be qualified to serve on the Post-Confirmation Committee unless that Creditor holds an Allowed Claim. A member of the Post-Confirmation Committee may resign at any time. A member will be automatically removed upon the sale, transfer or assignment of the member's Claim(s). If at any time there are fewer than two (2) members of the Post-Confirmation Committee, the U.S. Trustee may appoint additional members of the Post-Confirmation Committee.

The Post-Confirmation Committee may retain counsel, including counsel retained by the Committee, at the expense of the Estates. Any Professionals retained by the Committee with authority of the Bankruptcy Court may be retained by the Post-Confirmation

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:08    Page 25 of 44

Committee without further order of the Bankruptcy Court, provided that the Post-Confirmation Committee approves such retention in writing.

The Post-Confirmation Committee shall have all of the rights and obligations set forth in this Plan, including, without limitation, the authority to supervise, review and consult with the Plan Administrator as to the activities of the Plan Administrator and to remove and replace the Plan Administrator pursuant to the provisions of this Plan. Without limiting the generality of the foregoing, the Post-Confirmation Committee may: (a) review and approve any amendment to this Plan; (b) upon reasonable notice, meet with the Plan Administrator; (c) request financial information or other information relating to the implementation of this Plan from the Plan Administrator; and (d) upon the occurrence of any default under this Plan, move the Bankruptcy Court for appropriate relief. Moreover, upon consent of the Plan Administrator, or as otherwise ordered by the Bankruptcy Court, the Post-Confirmation Committee may take any action on behalf of the Estates that the Plan Administrator may take under the Plan.

Members of the Post-Confirmation Committee shall be compensated by the Estates for expenses in connection with serving on the Post-Confirmation Committee that would otherwise be compensable for members of a creditors' committee under section 503(b)(3)(F) of the Bankruptcy Code.

**5.6    Limitations of Liability.**

The Plan Administrator, the Post-Confirmation Committee (including its members individually) and their attorneys, accountants, consultants, employees and agents, shall have no liability by reason of the discharge of their duties, except any such liability that results from an act or omission to the extent that such act or omission is determined by Final Order to have constituted gross negligence or willful misconduct. Notwithstanding the foregoing, nothing in this paragraph shall relieve a Professional employed by the Plan Administrator or the Post-Confirmation Committee from liability for negligence in the performance of his professional duties.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 26
of 44

**5.7**      <u>Continued Operation of the Liquidating Debtors.</u>

On and after the Effective Date, the Liquidating Debtors shall continue to engage in wind-down activities and may use, acquire, dispose of and/or abandon Estate Assets without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules, except as set forth in this Plan. The Liquidating Debtors will not engage in the conduct of any trade or business, except to the limited extent necessary to accomplish the liquidation and distribution of Estate Assets.

**5.8**      <u>Liquidation of Real Property Assets; Sale Procedures Order.</u>

The Plan Administrator shall seek to sell or reduce to Cash the Real Property Assets in his sole discretion after consultation with the Post-Confirmation Committee. The Plan Administrator shall be entitled to use his business judgment to determine the method and timing of disposition of the Real Property Assets, with a view toward achieving the highest return reasonably feasible given all factors he deems to be appropriate in his sole discretion, including market conditions, carrying costs and risks of ownership; <u>provided</u>, that the Plan Administrator shall endeavor to liquidate all Real Property Assets within five (5) years after the Effective Date.

With respect to the disposition of Real Estate Assets, and notwithstanding any other provision of this Plan, the Plan Administrator shall comply with the procedures for notice and approval by the Bankruptcy Court set forth in the Sale Procedures Order.

**5.9**      <u>Fractionalized Interestholder Stay Pending Appeal.</u>

The Plan Administrator shall deposit all Sales Proceeds in the Disputed Claim Reserve as Real Estate Assets are liquidated. If there are no pending appeals by holders of Fractionalized Interestholder Secured Claims with respect to the affected Real Property Assets, the Plan Administrator may transfer the Sales Proceeds to the Plan Fund. If any holder of a Fractionalized Interestholder Secured Claim has filed an appeal of a Bankruptcy Court order avoiding his or her interest in the affected Real Property Asset and such appeal is pending and has not been determined by Final Order or otherwise has been resolved, then the

Plan Administrator shall give sixty (60) days prior written notice of his intention to transfer the Sales Proceeds to the Plan Fund to any such holder.

In all cases in which the Plan Administrator has provided the written notice required in the foregoing paragraph, the appellant shall be required to serve the Plan Administrator within sixty (60) days of his or her receipt of the Plan Administrator's notice with a copy of an order of the Bankruptcy Court entered pursuant to Bankruptcy Rule 8005 staying the release of the Sale Proceeds pending the disposition of the appeal, together with evidence reasonably satisfactory to the Plan Administrator that the appellant has complied with any requirements in the stay order for the filing of a bond or other security. If, after the sixtieth (60th) day following delivery of his notice, the Plan Administrator has not received the order and other documents, he shall transfer the Sales Proceeds to the Plan Fund. If the appellant has timely served the Plan Administrator with the order and other required documents, the Plan Administrator shall maintain in the Disputed Claims Reserve an amount equal to the portion of the Sales Proceeds which is equal to the fractionalized ownership interest of appellant in the Real Property Asset which has been sold or collected for the benefit of appellant until the stay expires or is terminated. Upon entry of a Final Order in an Investor Avoidance Action in favor of a holder of a Fractionalized Interestholder Secured Claim, the Plan Administrator shall disburse to the holder his or her percentage interest in the Sale Proceeds, in full satisfaction of the Fractionalized Interestholder Secured Claim, unless the affected Real Property Asset has not yet been liquidated, in which case the Plan Administrator will not be required to make any disbursement on the Fractionalized Interestholder Secured Claim until the affected Real Property Asset has been liquidated.

### 5.10    Retained Claims and Defenses.

On and after the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Debtors, acting through the Plan Administrator, shall retain and may enforce the Retained Claims and Defenses with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:43:00    Page 28 of 44

### 5.10.1      Standing.

To the extent any Retained Claims and Defenses are already pending on the Effective Date, the Plan Administrator, as successor to the Trustee, may continue prosecution of such Retained Claims and Defenses. Without limiting the generality of the foregoing, the Plan Administrator, acting on behalf of the Liquidating Debtors, shall accede to and become the holder of all rights pursuant to the attorney-client privilege, attorney work product and any other or similar doctrine of the Trustee. Any proceeds received from or on account of the Retained Claims and Defenses shall constitute Estate Assets and shall vest entirely in the Liquidating Debtors.

### 5.10.2      Avoidance Actions

On and after the Effective Date, the Liquidating Debtors, acting through the Plan Administrator, shall retain and may enforce the Avoidance Actions with all powers and authority of a debtor in possession or trustee under the Bankruptcy Code. To the extent any Avoidance Actions are already pending on the Effective Date, the Plan Administrator as successor to the Trustee, may continue the prosecution of such Avoidance Actions. Any proceeds received from or on account of the Avoidance Actions shall constitute Estate Assets and shall vest entirely in the Liquidating Debtors.

### 5.10.3      Small Claims and Defenses

Except as may be otherwise provided in this Plan, with respect to any of the following having a net value equal to or less than $50,000.00: (a) Retained Claims and Defenses; or (b) any objections to Claims, the Plan Administrator, in consultation with the Post-Confirmation Committee, may investigate such claims, objections or defenses and may assert, settle or enforce any such claims, objections or defenses without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

### 5.10.4      Large Claims and Defenses

With respect to any of the following having a net value over $50,000.00: (a) Retained Claims and Defenses; or (b) any objections to Claims, the Plan Administrator shall

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:08    Page 29 of 44

file and serve a motion and opportunity for hearing seeking Bankruptcy Court approval to settle or abandon any such claims, objections or defenses, as a condition to taking any action.

### 5.10.5    Bankruptcy Rule 2004

In the course of any ongoing investigations, the Plan Administrator shall have the right post-confirmation to utilize Bankruptcy Rule 2004 examinations.

### 5.11    Funding of the Plan.

This Plan will be funded with the Estate Assets, including the Cash, and the net recovery (after payment of all fees and expenses) from the pursuit of the Reserved Claims and Defenses and the proceeds thereof.

### 5.12    Establishment of Accounts by Plan Administrator.

On or as soon as practicable after the Effective Date, the Plan Administrator will establish the following accounts:  (1) the "Plan Fund;" (2) the "Administrative Claims Reserve;" and (3) the "Disputed Claims Reserve."

The Plan Fund Account shall be funded by all Cash which is not deposited in the Administrative Claims Reserve or the Disputed Claims Reserve.  The funds in the Plan Fund (minus Plan Expenses) shall be held for the benefit of holders of Claims in Classes 1, 3 and 4, and shall be invested by the Plan Administrator in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code.  All duties and obligations associated with the maintenance of the Plan Fund Account, including without limitation, any fees, taxes, tax reporting or filings with any governmental authority, shall be the sole responsibility of the Plan Administrator.

The Administrative Claim Reserve shall be funded for the purpose of holding the amounts of Administrative Claims (including amounts for Professional Fees) which have not become Allowed Claims, or if such Administrative Claims have been Allowed, have not yet been paid in full, and may be closed upon payment of all Allowed Administrative Claims.

The Disputed Claims Reserve shall be funded with an amount established in accordance with Article V (5.17).  The Disputed Claims Reserve may be funded in part by

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:45:06    Page 30
of 44

transfer of funds held in the segregated account maintained by the Trustee pursuant to the terms of the Sale Procedures Order.

### 5.13 Cooperation.

Proponents shall cooperate with one another in connection with any matter related to the consummation or implementation of this Plan.

### 5.14 Payment of Plan Expenses.

All Plan Expenses may be paid by the Liquidating Debtors from Estate Assets.

### 5.15 Distribution Procedures.

#### 5.15.1 Distributions on Allowed Class 1 and Class 4 Claims.

On the later to occur of: (a) the Initial Distribution Date; or (b) the date a Class 1 Claim or Class 4 Claim becomes an Allowed Claim, the Plan Administrator shall make a distribution to holders of Allowed Class 1 Claims and Allowed Class 4 Claims, in Cash, in an amount equal to 100% of the Allowed Claim.

#### 5.15.2 Distributions on Allowed Class 3 Claims.

Distributions to holders of Allowed Claims in Class 3 shall be made in the following manner:

##### 5.15.2.1 Initial Distribution.

On the Initial Distribution Date or as soon thereafter as practicable, the Plan Administrator shall make an initial pro rata distribution of Net Available Cash to holders of Allowed Claims in Class 3; provided, however, that the Plan Administrator will make such initial distribution only after the Plan Administrator (i) has made all payments then owing on account of Administrative Claims and to the holders of Allowed Priority Tax Claims, Allowed Claims in Classes 1 and 4, and (ii) has transferred the appropriate reserves to the Disputed Claims Reserve and Administrative Claims Reserve.

##### 5.15.2.2 Further Distributions.

After the Initial Distribution, further distributions to holders of Allowed Class 3 Claims shall be made as soon as practicable as determined by the business judgment of the Plan Administrator based upon the amount of funds to be distributed relative to the

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 31 of 44

administrative costs of making such a distribution.  Because both the timing and amount of interim distributions to holders of Allowed Class 3 Claims is dependent on proceeds from the liquidation of Real Estate Assets and the prosecution of Retained Claims and Defenses, it would be imprudent to provide an estimate as to when distributions will be made under the Plan.  To the extent not accomplished previously, the Plan Administrator shall promptly serve objections to Claims with the goal of filing and serving all objections no later than one hundred and eighty (180) days after the Effective Date, provided, however, that expiration of such period shall not bar later objections.

No payments or distributions shall be made by the Liquidating Debtors on account of Disputed Claims unless and to the extent such Claims become Allowed Claims.  Except as otherwise agreed by the holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Liquidating Debtors under the Plan shall be distributed in such amounts and at such times as may be reasonably prudent, in the form of interim distributions, with sufficient reserves established to satisfy the reserve requirements set forth in the Plan.  Unless otherwise provided in this Plan, all distributions shall be:  (i) in U.S. dollars by check; and (ii) delivered by first-class mail (or by other equivalent means as appropriate).

### 5.16    Treatment of Disputed Claims.

At such time as a Disputed Claim becomes an Allowed Claim, the previous distributions due on account of such Allowed Claim shall be released from the Disputed Claims Reserve and placed in the Plan Fund.  Distributions on account of such Allowed Claims shall not be made immediately after Disputed Claims become Allowed Claims, but instead shall be made on the next interim distribution date set by the Plan Administrator.

Any funds that have been reserved on account of a Disputed Claim that becomes an Allowed Claim which exceed the amount of such Allowed Claim shall be returned to the Plan Fund.  Any funds reserved for Claims which are Disallowed shall be returned to the Plan Fund.

JOINT PLAN OF LIQUIDATION
(AS AMENDED FEB. 14, 2011)

**5.17    Calculation of Appropriate Reserves.**

Except to the extent that the Plan Administrator and the holder of a Claim otherwise agree, or the Bankruptcy Court otherwise determines, in the event that a sufficient reserve is less than the full amount of the Disputed Claim, in determining the amount to be reserved for Disputed Claims, the appropriate reserve shall be based on pro rata calculations made as if all Disputed Claims were Allowed Claims.  Notwithstanding the foregoing, the Plan Administrator is not required to provide any reserve for Claims that are asserted in an unliquidated amount.

**5.18    Treatment of Unclaimed Property.**

If a distribution to a holder of an Allowed Claim becomes Unclaimed Property, the Plan Administrator will make reasonable efforts to locate and contact the holder of the Allowed Claim, taking into account the size of the Allowed Claim.   If, following such reasonable efforts, the Plan Administrator is unable to locate and/or contact the holder of an Allowed claim, the Plan Administrator will seek an order of the Bankruptcy Court determining that the holder of the Allowed Claim is not entitled to the distribution or any further distributions on account of the Allowed Claim, and directing return of such Unclaimed Property to the Plan Fund.  In seeking this order, the Plan Administrator shall file a declaration describing the efforts undertaken to locate and/or contact the holder of the Allowed Claim.

**5.19    De Minimis Distributions; Rounding of Distributions.**

The Plan Administrator shall not make a distribution to the holder of an Allowed Claim if the amount of the distribution is less than $10.  All Cash not so distributed shall remain in the Plan Fund.  The Plan Administrator may round all distributions to the nearest whole dollar amount.  If there is a remainder of Net Available Cash after the Final Distribution that is insufficient for a distribution (because the amount of the distribution to each holder of an Allowed Claim would be less than $10), and the Plan has been otherwise consummated, then the remainder shall be donated to a section 501(c)(3) charity of the Plan Administrator's choice.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 33
of 44

**5.20    Post-Confirmation Professional Fees.**

All fees and costs incurred by Professionals after Confirmation shall be paid in full without further review by, or order of, the Bankruptcy Court, provided that, all such professionals shall send copies of invoices for fees and costs incurred after the Confirmation Date to the Plan Administrator and the Post-Confirmation Committee.  The Plan Administrator and Post-Confirmation Committee shall have five (5) days from receipt of such invoice to notify the affected Professional of an objection, which objection, if it is not resolved by agreement of the parties, shall be subject to an order of the Bankruptcy Court. The Plan Administrator (a) is expressly authorized to employ professionals as required for an efficient administration of the Estates, including but not limited to, accountants, attorneys and real estate advisors, and (b) may retain Professionals previously employed by the Trustee or Committee in the Cases.

**5.21    Repeal of Bylaws; Replacement of Fund Manager.**

By operation of this Plan, on the Effective Date, all bylaws of Cedar Funding will be repealed and the articles of incorporation of Cedar Funding will be deemed amended to provide that the Plan Administrator will displace the board of directors, or any other person or persons responsible for Cedar Funding.  The Plan Administrator will file appropriate notices with the Secretary of State for the State of California as required by applicable law.

The Plan Administrator shall replace the Trustee as the manager of the Fund. Prior to the closing of the Cases, the Plan Administrator may not be removed by members of the Fund as manager of the Fund absent authorization of the Bankruptcy Court.

**5.22    Estimation of Claims.**

The Plan Administrator or Post-Confirmation Committee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code.  If the Bankruptcy Court estimates any Claim, such estimated amount shall constitute the Allowed Amount for the Claim for voting on the Plan.

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:18:00    Page 34
of 44

## ARTICLE VI.

## CONDITIONS PRECEDENT

### 6.1     Conditions to Confirmation.

Confirmation of this Plan is conditioned upon entry of an order confirming the Plan which shall, among other things: (1) decree that the Plan and the Confirmation Order shall supersede all Bankruptcy Court orders entered prior to the Confirmation Order that are inconsistent therewith; (2) authorize the implementation of the Plan in accordance with its terms; (3) authorize the Plan Administrator, on the Effective Date or as soon thereafter as practicable,  to deposit in the Plan Fund or Administrative Claims Reserve, as needed, all Sales Proceeds, unless the holder(s) of a Fractionalized Interestholder Secured Claim has first obtained a stay pending appeal, and in such event the Plan Administrator shall deposit in the Disputed Claims Reserve an amount equal to the percentage of the Sales Proceeds which is equal to the percentage ownership in the note and deed of trust which is the subject of the holder(s)' appeal and deposit the balance of the Sales Proceeds in the Plan Fund or Administrative Claims Reserve, if needed; (4) contain findings supported by evidence introduced at the confirmation hearing that the Plan is proposed in good faith, and that all actions contemplated by the Plan are necessary to implement the restructuring contemplated by the Plan; (5) issue the injunction set forth in the Plan; (6) decree that on the Effective Date, the revesting of assets in the Liquidating Debtors contemplated by the Plan is or will be legal, valid and enforceable, and that such assets will vest free and clear of all liens, Claims, and Interests except as provided under the Plan; and (7) confirm the Plan and authorize implementation of the Plan in accordance with its terms.  If any of the foregoing conditions is not met, the Proponents may, at their option, withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

### 6.2     Conditions to Effective Date.

At any time after the Confirmation Order is entered (and provided no stay is then in effect), the Proponents shall have the power and authority to cause the Plan to become effective, and may cause the Plan to become effective notwithstanding that all of the

JOINT PLAN OF LIQUIDATION
(AS AMENDED FEB. 14, 2011)

Case: 08-52709     Doc# 1496     Filed: 02/14/11     Entered: 02/14/11 12:10:00     Page 35
of 44

conditions to confirmations set forth in section 6.1, above, have not occurred.

## ARTICLE VII.

### EFFECTS OF CONFIRMATION

**7.1** **Binding Effect of Plan.**

Except as provided in this Plan or in the Confirmation Order, on the Effective Date the Plan shall be binding on all holders of Claims and Interests existing as of the date of Confirmation, whether or not such holder has filed a Claim or Interest in the Cases, whether or not such Claim is an Allowed Claim, whether or not such Interest is allowed, whether or not such Claim or Interest is impaired, and whether or not such holder has voted to accept the Plan. No holder of a Claim or Interest will have any right of action against the Debtors or Trustee except as set forth in the Plan. All Claims and Debts shall be as fixed and adjusted pursuant to this Plan.

**7.2** **Revesting of Property Free and Clear.**

Upon the Effective Date, title to all Estate Assets shall vest in the Liquidating Debtors for the purposes contemplated under the Plan. All Unsecured Claims against the Debtors or the Estates shall be of no further force and effect except with respect to the rights of holders of Allowed Claims to received payments or distributions as set forth herein. Following the Effective Date, the Liquidating Debtors may use, acquire or dispose of any such property free of any restrictions imposed by the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to creditors, except as may otherwise be required under this Plan or the Confirmation Order. Except as otherwise expressly provided in the Plan or Confirmation Order, all rights or causes of action are hereby preserved and retained for enforcement solely and exclusively by and at the discretion of the Liquidating Debtors.

**7.3** **Injunction.**

On the Effective Date, all holders of Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from taking

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:46:00    Page 36 of 44

legal action against the Debtors or the Liquidating Debtors for the purpose of directly or indirectly collecting, recovering, and receiving payment or recovery with respect to any Claim or demand against the Debtors or the Liquidating Debtors, except as provided by the Plan.

In addition to the foregoing, on the Effective Date, and except as otherwise provided by the Plan, all holders of Claims against or Interests in the Debtors and all other parties in interest in the Cases, including without limitation David A. Nilsen and all investors in Cedar Funding and/or the Fund, shall be permanently enjoined pursuant to Bankruptcy Code § 105 from commencing, conducting or continuing in any manner, directly or indirectly, claims, causes of action or other proceedings of any kind against any transferees, for avoidance and recovery of fraudulent transfers which are the same transfers that are sought to be avoided and recovered by the Trustee in the Avoidance Actions, or which otherwise constitute property of the Estates. A schedule identifying all enjoined persons presently known to the Proponents will be attached as an exhibit to the Confirmation Order in compliance with Bankruptcy Rule 3020(c).

### 7.4    Limitation of Liability.

The Trustee, the Liquidating Debtors, the Committee and each of its past and present members, the Post-Confirmation Committee and each of its past and present members, and their respective officers, directors, managers, employees, agents and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action taken in good faith or omitted to be taken in connection with or related to the Cases, the investigations of potential claims or the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Cases; provided that this limitation shall not affect or modify the rights of any holder of an Allowed Claim to enforce its rights under the Plan, nor shall the foregoing exonerate any of the Exculpated Parties from any liability that results from an act or

{00557629.DOC v 1}
JOINT PLAN OF LIQUIDATION
(AS AMENDED FEB. 14, 2011)
Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:40:00    Page 37 of 44

omission to the extent such act or omission is determined by Final Order to have constituted

gross negligence or willful misconduct.

In addition, notwithstanding any other provision of this Plan, no holder of a

Claim or Interest, no other party in interest, none of their respective agents, employees,

representatives, advisors, attorneys or affiliates, and no successors or assigns of the

foregoing, shall have any right of action against any Exculpated Party for any act or omission

in connection with, relating to, or arising out of the Cases or the consideration, formulation,

preparation, implementation, confirmation or consummation of the Plan, the Disclosure

Statement, or any transaction or document created or entered into, or any other act taken or

omitted to be taken, in connection therewith, except for the liability of any entity that would

otherwise result from any such act or omission to the extent that such act or omission is

determined in a Final Order to have constituted gross negligence or willful misconduct. The

Exculpated Parties do not include any Professionals.

## ARTICLE VIII.

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any prepetition executory contract or unexpired lease which has not expired

by its own terms on or prior to the Effective Date, or which has not been assumed, assumed

and assigned, or rejected with the approval of the Bankruptcy Court, is deemed rejected on

the Effective Date. The entry of the Confirmation Order by the Bankruptcy Court constitutes

approval of such rejections pursuant to Bankruptcy Code §§ 365(a) and 1123, effective as of

the Effective Date.

Claims arising from the rejection of executory contracts or unexpired leases

rejected as of the Effective Date pursuant to this Plan must be filed and served on the Plan

Administrator within thirty (30) calendar days of the Effective Date or be forever barred.

Unless otherwise ordered by the Bankruptcy Court prior to the Confirmation Date, all Claims

arising from the rejection of executory contracts and unexpired leases will be treated as Class

3 Claims.

{00557629.DOC v 1}
(AS AMENDED FEB. 14, 2011)

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 38
of 44

# ARTICLE IX.

## MODIFICATION OF PLAN

The Trustee and Committee, jointly as the Plan Proponents, may modify the Plan prior to Confirmation if the Plan, as modified, meets the requirements of the Bankruptcy Code. Such modification shall be deemed accepted or rejected by a holder of a Claim that has previously accepted or rejected the Plan unless, within the time fixed by the Bankruptcy Court, such holder changes such holder's previous acceptance or rejection.

# ARTICLE X.

## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(i)     To determine the allowance and classification of Claims upon objection to such Claims, and to estimate Claims pursuant to section 502(c) of the Bankruptcy Code;

(ii)    To hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

(iii)   To hear and determine requests for payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code;

(iv)    To hear and determine controversies and disputes regarding interpretation of this Plan or the Confirmation Order;

(v)     To enter and implement such orders as may be appropriate in the event confirmation is for any reason stayed, reversed, revoked, modified or vacated;

(vi)    To hear and determine any and all applications by Professionals for an award of pre-Effective Date Professional Fees, and to consider and rule upon the periodic and final fee applications of the Plan Administrator, Professionals, or other Professionals retained Post-Confirmation as provided in this Plan, and to resolve any disputes concerning payment of post-Effective Date fee requests;

{00557629.DOC v 1}

JOINT PLAN OF LIQUIDATION
(AS AMENDED FEB. 14, 2011)

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:15:00    Page 39
of 44

(vii)  To modify the Plan to the extent permissible under the Bankruptcy Code, and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan;

(viii)  To liquidate any Disputed Claims;

(ix)  To interpret, administer and/or enforce the provisions of the Plan, and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan, or any other agreement, document or instrument contemplated by the Plan, including without limitation, all claims asserted against the Plan Administrator or against any Professionals retained by him, or claims asserted against the Trustee, the Committee and its members, and any Professionals retained by the Trustee or the Committee.

(x)  To hear and determine any matters that may arise in connection with the sales of Estate Assets or any order of the Bankruptcy Court with respect thereto;

(xi)  To hear and determine all contested matters or applications pending on the Effective Date, and any and all adversary proceedings, including Retained Claims and Defenses and Avoidance Actions, brought by the Trustee or Plan Administrator;

(xii)  To approve any compromises and settlements and/or abandonments of claims against third parties, and/or the abandonment of any Estate Asset, which either the Plan Administrator in his sole discretion believes should be noticed to creditors, or which is the subject of an objection by the Post-Confirmation Committee.

(xiii)  To enter a Final Decree and order closing the Cases.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

### 11.1  Rules of Interpretation.

For purposes of this Plan:  (a) each term will include the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neutral gender, will

{00557629.DOC v 1}

Case: 08-52709   Doc# 1496   Filed: 02/14/11   Entered: 02/14/11 12:10:06   Page 40 of 44

include the masculine, feminine and neutral gender; (b) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or affect the interpretation of this Plan; (c) the rules of construction of section 102 of the Bankruptcy Code will apply; and (d) any undefined term used in this Plan that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meanings assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

## 11.2    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## 11.3    Governing Law.

Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release or other agreement entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, the laws of the State of California.

## 11.4    Exhibits.

All exhibits attached to the Plan or the Disclosure Statement are incorporated into the Plan by this reference.  If any exhibits are amended, changed or corrected, the replacement exhibits will be filed with the Bankruptcy Court prior to the commencement of the hearing seeking confirmation of this Plan.

## 11.5    Transfer Tax Exemption.

The Debtors and the Liquidating Debtors shall have all of the rights and benefits conferred under section 1146(c) of the Bankruptcy Code under this Plan.

## 11.6    Notices.

All notices required or permitted to be made in accordance with this Plan shall be in writing and shall be delivered by first class mail, overnight courier service or via facsimile with electronic confirmation of receipt as follows:

Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:10:00    Page 41 of 44

To the Chapter 11 Trustee:

R. Todd Neilson
LECG, LLC
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 300-2224
(310) 556-0766 (Facsimile)
Email: tneilson@lecg.com


With a copy to:

Cecily A. Dumas
Friedman Dumas & Springwater LLP
33 New Montgomery St., Suite 290
San Francisco, CA 94105
(415) 834-3800
(415) 834-1044 (Facsimile)
cdumas@friedumspring.com

To the Committee or the Post-Confirmation Committee:

Aron M. Oliner
Duane Morris LLP
One Market Plaza, Spear Tower
Suite 2200
San Francisco, CA 94105
(415) 957-3104
(415) 520-5308 (Facsimile)
roliner@duanemorris.com

To the Plan Administrator:

Russell K. Burbank
Burr Pilger Mayer, Inc.
600 California Street, Suite 1300
San Francisco, CA 94108
(415) 677-4530
(415) 288-6288 (Facsimile)
rburbank@bpmcpa.com

## 11.7    Successor and Assigns.

All rights, benefits and obligations of any entity named or referred to in this

Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators,

successors and/or assigns of such entity.

**11.8    Implementation.**

Upon confirmation of the Plan, the Trustee and the Committee shall be authorized to take all steps and execute all documents necessary to effectuate the provisions of the Plan.

**11.9    Corporate Actions.**

By reason of the entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the owners, shareholders, members, directors, managers or officers of either of the Debtors shall be deemed to have occurred and be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation or limited liability law of the state in which each Debtor or Liquidating Debtor is organized or incorporated, without any requirement of further action by the owners, shareholders, members, directors, managers or officers of the Debtors.

**11.10   Waiver of Fourteen (14) Day Stay.**

The Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e).

DATED: February 14, 2011          R. Todd Neilson,
                                   Chapter 11 Trustee


                                   By:  ___/s/ R. Todd Neilson_____
                                        R. Todd Neilson

DATED:  February 14, 2011          OFFICIAL COMMITTEE OF UNSECURED
                                   CREDITORS


                                   By: _/s/ Antonio Flores_____
                                       Antonio Flores, Chair

{00557629.DOC v 1}

DATED:  February 14, 2011          FRIEDMAN DUMAS & SPRINGWATER LLP


                                   By:  _/s/ Cecily A. Dumas_____
                                        Cecily A. Dumas
                                        Counsel for the Chapter 11 Trustee

DATED:  February 14, 2011          DUANE MORRIS LLP


                                   By: _/s/ Aron M. Oliner_____
                                        Aron M. Oliner
                                        Counsel for the Official Committee of
                                        Unsecured Creditors

{00557629.DOC v 1}
Case: 08-52709    Doc# 1496    Filed: 02/14/11    Entered: 02/14/11 12:15:00    Page 44
of 44